# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**LEONARD HAMILTON,**
**Claimant Below, Petitioner**

**FILED**
**May 20, 2021**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)** **No. 20-0047** (BOR Appeal No. 2054553)
(Claim No. 2018005569)

**LOGAN WATER CARE, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Leonard Hamilton, by Counsel Anne L. Wandling, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Logan Water Care, Inc., by Counsel T. Jonathan Cook, filed a timely response.

The issue on appeal is compensability. The claims administrator rejected the claim on September 5, 2017. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decision in its August 27, 2019, Order. The Order was affirmed by the Board of Review on December 19, 2019.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

> (b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions[.]

> . . . .

1

(c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of Constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record. . . .

See Hammons v. West Virginia Off. of Ins. Comm'r, 235 W. Va. 577, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in Justice v. West Virginia Office Insurance Commission, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. See also Davies v. West Virginia Off. of Ins. Comm'r, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Hamilton, a water care laborer, alleges that he suffered an inhalation injury at work on June 6, 2017, when he was exposed to chemicals. Mr. Hamilton has a history of lung issues. On June 27, 2015, he was treated at Logan Regional Medical Center Emergency Room following a motor vehicle accident. Mr. Hamilton was diagnosed with acute low back pain, lumbosacral strain, and hip contusion. A chest x-ray was taken that day and showed no acute findings and no evidence of pneumothorax. Treatment notes from Lincoln Primary Care from May 26, 2016, through January 13, 2017, indicate Mr. Hamilton was treated for chronic obstructive pulmonary disease. He was prescribed an inhaler.

On June 6, 2017, Mr. Hamilton was transported to St. Mary's Medical Center after exposure to sodium hydrosulfite at work that day. Mr. Hamilton developed acute respiratory insufficiency which progressed to respiratory failure. Mr. Hamilton required cardiopulmonary resuscitation in the emergency room and was placed on a ventilator. A chest x-ray showed a minimal nonspecific density above the left hemidiaphragm. A chest CT scan showed subsegmental atelectasis. It was noted that Mr. Hamilton had a history of asthma. He was diagnosed with acute hypoxemic and hypercapnic respiratory failure secondary to toxic inhalation. Mr. Hamilton spent two days in the hospital and was discharged with diagnoses of acute hypoxemic respiratory failure, poorly controlled asthma with recent exacerbation, and left lower lobe lung aspiration injury. On July 8, 2017, Mr. Hamilton presented to Logan Regional Medical Center Emergency Room for chest pain. A chest x-ray showed no acute findings.

The Employees' and Physicians' Report of Injury was completed on July 25, 2017, and indicated Mr. Hamilton injured his heart and lungs after inhaling chemicals at work. The physician's section listed the diagnoses as unspecified cardiac arrest and respiratory symptoms due to occupational injury.

In an August 15, 2017, Investigative Report, Coventbridge Group concluded that an investigation did not support Mr. Hamilton's account of his alleged injury. Two of Mr. Hamilton's coworkers stated that on the day of the alleged injury, they saw Mr. Hamilton sitting at the break table before his shift. Mr. Hamilton called for help approximately three minutes after his shift

started. Mr. Hamilton's coworkers asserted that Mr. Hamilton did not have time that day to use the chemical that allegedly caused an injury. In order to access the chemicals, Mr. Hamilton would have had to uncap all tanks, which takes thirty to forty-five minutes; remove the screens and springs, which takes thirty minutes; and dump the canisters, which takes forty-five to sixty minutes. After Mr. Hamilton was taken to the hospital, a coworker had to finish uncapping the tanks, and none of the other steps were completed. The claims administrator rejected the claim on September 5, 2017.

Mr. Hamilton testified in a November 6, 2017, deposition that on the day of his injury he was at work for approximately an hour and a half before the inhalation incident occurred. Mr. Hamilton stated that he uncapped and emptied the containers. He was cleaning the containers with Iron Out for ten to fifteen minutes and then he lost his breath and had to call for help. He had to be transported to the emergency room. Mr. Hamilton stated that he had problems while working with Iron Out in the past but not to the extent that he required treatment. Mr. Hamilton testified that his work area had no ventilation and no protective equipment was worn. Mr. Hamilton asserted that the chemical exposure resulted in respiratory failure and cardiac arrest. He stated that he had no prior diagnosis of asthma and no prior heart issues. Mr. Hamilton admitted that he was prescribed an inhaler prior to the alleged injury as preventative treatment for allergies and asthma-like symptoms but asserted that he had never experienced an asthma attack.

In a November 6, 2017, treatment note, Kamel Marzouk, M.D., noted that Mr. Hamilton was seen following exposure to hydrofluoric acid at work. He recommended a chest CT scan and pulmonary function studies. Mr. Hamilton was taken off of work until further notice. On February 22, 2018, Mr. Hamilton returned and reported progressively worsening mild to moderate shortness of breath for the past three to five years. Dr. Marzouk stated that chest CT scans showed an elevated hemidiaphragm. Pulmonary function studies were attempted at Logan Regional Hospital on December 13, 2017, but Mr. Hamilton was unable to perform the test due to insufficient air. Valid results could not be obtained. A March 2, 2018, Sniff Test showed no acute findings.

Pulmonary testing at the Occupational Lung Center on April 2, 2018, showed FVC was 92% of predicted prebronchodilator and 96% postbronchodilator. FEV1 was 87% of predicted prebronchodilator and 95% postbronchodilator. The FEV1/FVC ratio was 76% prebronchodilator and 80% postbronchodilator.

Joseph Grady, M.D., performed an independent medical evaluation on May 25, 2018, in which he noted that he had no documentation of the exact chemical to which Mr. Hamilton was exposed. On examination, Dr. Grady noted wheezing, which could be indicative of reactive airway disease. Dr. Grady completed an addendum to his report on June 15, 2018, and stated that he had been given copies of and reviewed Mr. Hamilton's medical records. He opined that Mr. Hamilton suffered an episode of respiratory arrest, likely the result of a severe asthmatic reaction to workplace chemical exposure. Dr. Grady further opined that Mr. Hamilton had a preexisting history of reactive airway disease that was poorly treated. The workplace chemical exposure likely caused a hypersensitivity reaction of acute respiratory arrest. Dr. Grady stated that the underlying lung disease is not the result of the chemical exposure. However, the acute respiratory failure episode Mr. Hamilton suffered, which required hospitalization, was the result of the exposure. Dr.

3

Grady believed the medical records show adequate evidence of an episode of acute respiratory failure due to a workplace chemical exposure.

In a January 8, 2019, treatment note Jack Doty, PA-C, noted that he had treated Mr. Hamilton for the past year for injuries sustained from a workplace chemical exposure. He opined that Mr. Hamilton suffered heart damage after he went into cardiac arrest due to the exposure and also suffered lung damage due to his episode of acute respiratory failure.

On January 31, 2019, Anna Allen, M.D., noted that Mr. Hamilton reported difficulty breathing since his chemical exposure. She also noted that Mr. Hamilton sustained a prior chest trauma in 2000, which resulted in injuries to his ribs, thorax, and thoracic spine, requiring two chest tubes. Dr. Allen diagnosed occupational asthma and restrictive lung disease. Dr. Allen stated that the chemicals Mr. Hamilton used at work result in the release of sulfur dioxide when mixed with water, and the chemicals should therefore only be used in a well-ventilated area. She opined that Mr. Hamilton was at high risk for reaction to chemicals due to his history of intubation and chest tubes. Dr. Allen noted that some of Mr. Hamilton's coworkers also had reactions to the chemicals that were not severe. Dr. Allen opined that Mr. Hamilton's chemical exposure resulted in cardiac arrest.

Dr. Grady testified in a May 10, 2019, deposition that a pneumothorax and chest tube placement do not normally cause lasting damage. Dr. Grady noted that Mr. Hamilton was previously diagnosed with chronic obstructive pulmonary disease and was prescribed an inhaler. Dr. Grady testified that Mr. Hamilton's preexisting lung disease could have caused increased sensitivity to chemicals, resulting in a severe asthmatic reaction at work. Dr. Grady found no heart issues. He opined that the December of 2017 pulmonary function studies were unreliable because acceptable results were unable to be obtained. The April of 2018 pulmonary function studies were valid and showed no restrictive lung disease processes. Dr. Grady disagreed with Dr. Allen's diagnosis of occupational asthma. Dr. Grady stated that he does not believe asthma can cause fibrotic lung disease and that a fibrotic disease process in the lungs would cause restrictive lung disease, not obstructive lung disease.

James McIntosh, CIH, CSP, an industrial hygienist, noted in a May 23, 2019, report that he was asked to render an expert opinion regarding Mr. Hamilton's alleged hazardous dust inhalation. Mr. McIntosh stated that he visited Mr. Hamilton's work site three times and observed plant processes and operations. He detected no unusual or chemical odor on any of his visits. He collected two personal respiration dust samples and two dust samples from an employee after the employee performed the same job duties Mr. Hamilton performed on the day of his alleged injury. Dr. McIntosh opined that Mr. Hamilton did not experience exposure to hazardous levels of airborne dust on June 6, 2017.

In a May 28, 2019, affidavit, Peggy Light stated that Mr. Hamilton's assertion that other employees experienced issues due to chemical exposure was incorrect. Ms. Light said that there has been no report from any employee of chemical exposure irritation or symptoms. She also stated that the chemical Mr. Hamilton was using on the day of his alleged injury can be purchased by the general public at hardware stores. In a separate affidavit that day, Brent Hall, Mr. Hamilton's

coworker, stated that he was unaware of any report by an employee, other than Mr. Hamilton, of symptoms or issues due to chemical exposure. He also stated that the chemical Mr. Hamilton used can be purchased by the general public.

The Office of Judges affirmed the claims administrator's rejection of the claim in its August 27, 2019, Order. The Office of Judges began by noting that it is Mr. Hamilton's burden to establish his claim. It found that Mr. Hamilton's description of his chemical exposure is not supported by the record. His assertion that other employees also suffered symptoms of chemical exposure was also not supported. The Office of Judges determined that Dr. Marzouk noted Mr. Hamilton had a history of seasonal allergies with shortness of breath for which he used an inhaler. Dr. Allen diagnosed occupational asthma. Dr. Grady found that Mr. Hamilton most likely suffered a hypersensitivity reaction with an episode of acute respiratory arrest, which resolved. The Office of Judges found that the evidence shows Mr. Hamilton suffered from respiratory issues prior to his alleged work exposure. His alleged chemical exposure on June 6, 2017, would have, at most, resulted in an aggravation of his preexisting lung condition. Per *Gill v. City of Charleston,* 236, W. Va., 737, 783 S.E.2d 857 (2016), an aggravation of a preexisting condition is only compensable if such aggravation results in a discrete new injury. The Office of Judges concluded that Mr. Hamilton failed to show that he suffered a discrete new injury rather than an aggravation of his preexisting lung disease. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on December 19, 2019.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Pursuant to West Virginia Code § 23-4-1, employees who receive injuries in the course of and as a result of their covered employment are entitled to benefits. For an injury to be compensable it must be a personal injury that was received in the course of employment, and it must have resulted from that employment. *Barnett v. State Workmen's Comp. Comm'r*, 153 W.Va. 796, 172 S.E.2d 698 (1970). A preponderance of the evidence indicates Mr. Hamilton sustained an aggravation of his preexisting condition rather than a discrete new injury in the course of and resulting from his employment. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:** May 20, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison

**DISSENTING:**

Justice William R. Wooton